

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| LARRY OBERMANN, | ) | No. ED111004 |
| | ) | |
| Appellant, | ) | Labor and Industrial Relations Commission |
| | ) | |
| vs. | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI AS CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: August 22, 2023 |

Kelly C. Broniec, C.J., Philip M. Hess, J., and James M. Dowd, J.

**Introduction**

This workers' compensation case concerns the application of the 2014 amendments to

section 287.220.3 of the Missouri Workers' Compensation Act which govern when a worker

who is permanently and totally disabled (PTD) may become entitled to receive benefits from the

Second Injury Fund (Fund).[1]  Pursuant to the Supreme Court's recent interpretation of this

section in *Treasurer of State v. Parker*, 622 S.W.3d 178 (Mo. banc 2021), and *Klecka v.*

*Treasurer of Missouri*, 644 S.W.3d 562 (Mo. banc 2022), a claimant must establish that his

---

[1] "The purpose of the [Second Injury Fund] is 'to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury.'" *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013) (quoting *Pierson v. Treasurer of State*, 126 S.W.3d 386, 389–90 (Mo. banc 2004)).

primary injury in combination with his qualifying, preexisting disabilities — that is, those which are medically documented preexisting disabilities equaling a minimum of fifty weeks of permanent partial disability (PPD) compensation[2] — render him PTD and unable to compete for employment in the open labor market. However, Fund liability is negated if the claimant relies on *non-qualifying* disabilities to prove his PTD status because, again, section 287.220.3 limits Fund liability to PTD that results from the combination of the primary injury and *qualifying* disabilities only. *Parker*, 622 S.W.3d at 182; *Klecka*, 644 S.W.3d at 567.

Here, Appellant Larry Obermann's claim for benefits against the Fund arose from a workplace injury to his right shoulder (the primary injury) on November 3, 2017. Obermann previously suffered five other workers' compensation injuries, four of which are qualifying disabilities under section 287.220.3 in that each exceeded fifty weeks of PPD. The non-qualifying disability is a 1995 injury to his left knee that resulted in less than fifty weeks of PPD.

The Labor and Industrial Relations Commission denied Obermann's claim based on its finding that "[n]o medical or vocational expert opined that the employee's PTD resulted *solely* from the combination of the November 3, 2017, primary injury and the pre-existing disabilities exclusive of disability attributable to his compensable 1995 left knee injury." (Emphasis added.) In its conclusions of law, the Commission stated that the "only evidence in the record" is that Obermann's non-qualifying left knee injury contributed to his PTD claim which disqualifies him from PTD benefits from the Fund. The Commission reached these conclusions based on its finding that Obermann's medical and vocational rehabilitation experts included the non-qualifying 1995 left knee disability in their reports and testimony.

---

[2] There are two other categories of qualifying preexisting disabilities in section 287.220.3 which are not relevant to this opinion.

In this appeal of the Commission's decision, Obermann brings five claims of error.[3] In Point IV, which is dispositive, Obermann asserts that the Commission's decision was not supported by competent and substantial evidence. We agree because the record demonstrates that Obermann's vocational rehabilitation expert repeatedly opined that Obermann was unemployable, *irrespective of his left knee disability*, "based upon the limitations from the shoulder injury plus the pre-existing conditions that he had had from his feet injuries." This evidence directly refutes the Commission's decision thereby rendering its core holding wholly unsupported by the record. Accordingly, we reverse.

## Factual Background

Obermann was a heavy-equipment operator at a rock quarry for Base Rock Minerals in Cape Girardeau from April 2017 until November 3, 2017, when he tore his right rotator cuff while working. During his lengthy career in construction and carpentry, which began in 1990, he sustained numerous other workers' compensation injuries, including:

a. Right knee injury in 1991 – 52 weeks PPD;

b. Left knee injury in 1995 – 28 weeks PPD;

c. Right foot and left foot injuries in 2008 – 80 weeks and 64 weeks PPD, respectively; and

---

[3] Obermann claims: (1) that section 287.220.3 does not require a claimant's PTD to be solely the result of his qualifying preexisting disability combined with his subsequent primary injury; (2) that the Commission failed to consider the combination of all injuries to his left leg as a "disability"; (3) that the Commission rejected the ALJ's determination that his left knee injury was not a combining factor in his PTD award on the basis that there was not medical evidence specifically stating that the left knee injury was not part of the PTD despite long-standing legal precedent that an ALJ can make a determination as to the extent of the injury; (4) that the Commission's decision was not supported by competent and substantial evidence; and (5) that the Commission made conclusory statements without specific findings of fact in its final award.

3

d. Preexisting right shoulder disability – 52.2 weeks PPD.[4]

Obermann's extensive injury history is remarkable not only for the sheer number of injuries but for the severity of those injuries, especially the catastrophic foot injuries that resulted from a fall from height that kept him off work for five years. Four years after returning to work from those foot injuries, he suffered the primary shoulder injury at issue here.

Obermann settled the primary injury claim with his employer and then sought PTD benefits from the Fund based on his primary injury and his preexisting disabilities listed above. Obermann supported his claim with the deposition testimony of Dr. Shawn Berkin, an osteopathic family medicine physician and independent medical examiner, and Ms. Susan Shea, a vocational rehabilitation specialist. Both experts reviewed Obermann's extensive medical history and medical documentation, and Dr. Berkin performed a physical examination of Obermann. Additional details regarding both experts' findings and opinions will be discussed in the analysis below.

Following a September 29, 2021, hearing, the ALJ found Obermann was PTD and that Fund liability under section 287.220.3 had been established. The Fund timely appealed, asserting in part that the ALJ erred when she included the non-qualifying preexisting disability in arriving at the Fund's liability. The Commission agreed and reversed on those grounds.

This appeal follows.

**Standard of Review**

---

[4] The ALJ found, and the Commission agreed, that Obermann "had [a] preexisting disability of 22.5% of the right shoulder (52.2 weeks) attributable to chronic rotator cuff tear, AC joint arthritis synovitis, and bicipital tendonitis, which was asymptomatic before his November 3, 2017, primary injury."

Our review of the Commission's decision is governed by the Missouri Constitution and section 287.495. We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, § 18. Moreover, section 287.495.1 provides that on appeal this Court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1)   That the commission acted without or in excess of its powers;

(2)   That the award was procured by fraud;

(3)   That the facts found by the commission do not support the award; [or]

(4)   That there was not sufficient competent evidence in the record to warrant the making of the award."

This Court "reviews and examines the entire record to determine if there is sufficient competent and substantial evidence to support the Commission's award, or whether the Commission's award is contrary to the overwhelming weight of the evidence." *Aramark Educational Servs., Inc. v. Faulkner*, 408 S.W.3d 271, 274–75 (Mo. App. E.D. 2013). In so doing, we "must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it." *Porter v. RPCS, Inc.*, 402 S.W.3d 161, 171 (Mo. App. S.D. 2013).

We defer to the Commission on "issues of fact, credibility of witnesses, and weight to be given to conflicting evidence," however, we review interpretations or applications of law *de novo*. *Beine v. County of St. Charles*, 353 S.W.3d 704, 707 (Mo. App. E.D. 2011). "Nothing requires this Court to review the evidence and all reasonable inferences drawn from the evidence

in the light most favorable to the Commission's decision." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012).

## Discussion

We reverse the Commission's decision denying Obermann PTD benefits from the Fund because the Commission's dispositive factual finding sustaining its decision is unsupported by the record.

When a claimant brings a substantial evidence challenge, he must engage in a specific analysis to satisfy his burden of proof. *Fields v. Treasurer of Missouri*, 628 S.W.3d 803, 812 (Mo. App. E.D. 2021). He must:

"1. Identify a factual proposition needed to sustain the result;

2. Marshal all evidence in the record supporting that proposition, subject to the Commission's authorized factual and credibility determinations;

3. Marshal contrary evidence of the record, subject to the factfinder's credibility determinations, explicit, or implicit; and

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition."

*Harris v. Ralls County*, 588 S.W.3d 579, 596 (Mo. App. E.D. 2019). Our review of Obermann's brief demonstrates substantial compliance with this analytical sequence. *See Hayden v. Cut-Zaven, Ltd.*, 614 S.W.3d 44, 58 (Mo. App. E.D. 2020).

The Commission's statement that "[n]o medical or vocational expert opined that the employee's PTD resulted *solely* from the combination of the November 3, 2017, primary injury and the preexisting disabilities exclusive of disability attributable to his compensable 1995 left knee injury," which is necessary to sustain the judgment, is simply incorrect and unsupported by

6

the record.  As Obermann points out in his brief, the testimony of his vocational expert, Ms. Shea, repeatedly belied the Commission's dispositive finding in this regard.  She testified (1) that Obermann's "functional capacity prohibits any work as generally performed in the national labor market" and that his functional capacity is "based upon the limitations from the shoulder injury plus the pre-existing conditions that he had from his feet injuries"; and (2) that certain life factors, such as Obermann's use of narcotics to treat the pain caused by his foot injuries, his advanced age, and his anxiety, also make him "unemployable."  For his part, Dr. Berkin stated that Obermann "would not be considered to be an attractive or viable job candidate to any prospective employer," but deferred to Ms. Shea on the ultimate question of Obermann's PTD status and employability in the open labor market.

Although the "[a]cceptance or rejection of evidence is generally an issue for the Commission to determine," where, as here, the record is "wholly silent concerning the Commission's weighing of credibility and neither the claimant nor the experts testifying on his or her behalf are contradicted or impeached, the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence." *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 59 (Mo. App. E.D. 2019) (citing *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179 (Mo. App. S.D. 2004)) (internal quotation omitted).  Although the Commission here did not explicitly find Obermann's experts, Dr. Berkin and Ms. Shea, to be credible, the Commission did so implicitly based on its finding that Obermann was PTD "based on the medical documentation and opinions in evidence" inasmuch as Dr. Berkin and Ms. Shea offered the only expert medical opinions in evidence.  *See Marberry v. Treasurer of Missouri*, 635 S.W.3d 586, 592 (Mo. App. E.D. 2021).  The Fund did not offer any medical or vocational evidence and did not contradict or impeach Obermann's experts.  Accordingly, the Commission was not free to disregard Ms.

7

Shea's expert testimony concluding that Obermann was PTD as a result of his primary shoulder injury and his qualifying preexisting feet injuries.

Yet, from that unsupported and erroneous finding, the Commission concluded: "We deny the employee's Second Injury Fund claim because he failed to demonstrate that his permanent total disability resulted solely from a combination of disability attributable to the employee's primary injury and one or more preexisting disabilities that *qualify* based on the enumerated criteria" in section 287.220.3(a)a. In a similar vein, the Commission stated that "[t]he only evidence in the record" was that Obermann was PTD because of a combination of his primary injury plus his multiple preexisting disabilities *including* the non-qualifying 1995 left knee injury and that the left knee disability "cannot be considered in the Commission's PTD determination." Again, these conclusions are inaccurate and have no support in this record.

Moreover, the Commission's employment there of the phrase "cannot be considered," merits additional consideration in this context. That notion, that a non-qualifying disability *cannot be considered*, stems from this passage in *Parker*: "…the legislature excluded disabilities that are not the primary injury and that do not qualify under the first condition *from being considered* when determining if the claimant meets the second condition. Therefore, an employee satisfies the second condition by showing the primary injury results in PTD when combined with all preexisting disabilities that qualify under one of the four eligibility criteria listed in the first condition." 622 S.W.3d at 182 (emphasis added).

It is important to point out, though somewhat semantical it may be, that section 287.220.3(2) presents a causation question — that is, have the primary and qualifying preexisting disabilities *caused* the PTD? Couching the question in terms of *consideration* or *considering*, as the Commission has done here, is imprecise. *Parker* made clear that "[t]he existence of non-

8

qualifying disabilities does not count against (or for) the claimant in evaluating whether he meets the second threshold condition." 622 S.W.3d at 182. Thus, nothing prohibits a claimant's medical and vocational experts from *considering* non-qualifying disabilities in connection with their comprehensive review of a claimant's injury and disability history. What they may not do is include non-qualifying disabilities in their causation opinion.

We note the foregoing here because while Obermann's experts may have *considered* his non-qualifying left knee disability in their overall evaluation of him, their ultimate causation conclusion that Obermann was PTD did *not* rely on his left knee disability.

Next, we acknowledge Dr. Berkin's general testimony regarding Obermann's left knee that Obermann "should avoid squatting, kneeling, stooping, turning and twisting" because of "the previous injuries involving his knees and lower legs," but that Obermann was never assigned any permanent work restrictions because of his left knee and upon examination, the left knee "failed to reveal any swelling or inflammation."

But we need not make the determination whether Dr. Berkin's opinion included the left knee because with regard to the ultimate question of whether Obermann was PTD — that is, whether he was unable to compete in the open labor market — Dr. Berkin deferred to Ms. Shea who in turn unequivocally opined that Obermann was PTD because his primary shoulder injury, combined with his bilateral foot injuries, so limited his functional capacity as to render him unemployable. Section 287.020; *City of Columbia v. Palmer*, 504 S.W.3d 739, 745 (Mo. App. W.D. 2016). Because of his limited functional capacity combined with his age, narcotic medication, and chronic pain, Ms. Shea believed Obermann would not be able to work even at a sedentary level. Ms. Shea did not factor the left knee injury into her conclusion. Thus, the Commission's conclusion to the contrary lacked any support on this record and was erroneous.

Finally, we turn to the appropriate disposition called for here. We are cognizant that in connection with our disposition, we may not make any factual findings because that task is within the Commission's exclusive purview. *Parker*, 622 S.W.3d at 183. Nevertheless, since the Commission found that Obermann was PTD and the undisputed expert testimony was that his PTD resulted from his primary injury together with his qualifying preexisting feet disabilities, there are no additional factual findings needed to resolve this case. Thus, we follow our recent decision in *Marberry* in which we reversed the Commission after it found the claimant to be PTD but denied Fund liability after erroneously finding certain preexisting disabilities had been improperly considered in the section 287.220.3 analysis. 635 S.W.3d at 591. We remanded with instructions to enter an award in favor of the claimant and against the Fund for PTD benefits because no additional fact findings by the Commission were necessary. *Id.* at 591, 593. Likewise, we do the same here.

## Conclusion

The Commission's award is reversed and remanded with instructions to the Commission to enter a final award of PTD benefits in favor of Obermann and against the Fund.

_____
James M. Dowd, Judge

Kelly C. Broniec, C.J., and
Philip M. Hess, J. concur.

10